IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JUANITA LEMMONS, by and through Gary Lemmons, next friend and attorney-in-fact,<br><br>      Plaintiff,<br><br>vs.<br><br>ED LAKE, Director of Oklahoma Department of Human Services, and MIKE FOGARTY, Director of Oklahoma Health Care Authority,<br><br>      Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) Case No. CIV-12-1075-C<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM OPINION AND ORDER

  This case involves the legality of Medicaid planning. On April 18, 2012, Plaintiff Juanita Lemmons sold her farm and her Edwards Jones account to her son, Gary Lemmons, in exchange for a promissory note for $84,600 (the "Note"). The parties agree that the Note satisfies the elements of 42 U.S.C. § 1396p(c)(1)(I) because it has a repayment term that is actuarially sound, provides for equal payment terms without deferral or balloon payments, and prohibits cancellation upon the death of Plaintiff. Plaintiff filed an application for Medicaid assistance with the Oklahoma Department of Human Services ("OKDHS") twelve days after the execution of the Note, on April 30, 2012. OKDHS issued Plaintiff a "Notice of Denial" on August 17, 2012, denying Plaintiff's application for Medicaid assistance because it deemed the April 18th sale a transfer of resources without receipt of fair market value or, alternatively, a trust-like device. Plaintiff filed this lawsuit on September 27, 2012,

to challenge OKDHS's decision to deny her Medicaid benefits. Now before the Court are the parties' cross motions for summary judgment (Dkt. Nos. 32 & 33).

## I. LEGAL STANDARD

Summary judgment is proper if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it affects the disposition of the substantive claim. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). The party seeking summary judgment bears the initial burden of demonstrating the basis for its motion, and identifying those portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,'" that demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (citation omitted). If the movant satisfactorily demonstrates an absence of genuine issue of material fact with respect to a dispositive issue for which the non-moving party will bear the burden of proof at trial, the non-movant must then "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324. A court considering a summary judgment motion must view the evidence and draw all reasonable inferences therefrom in the light most favorable to the nonmoving party. Kendrick v. Penske Transp. Servs., Inc., 220 F.3d 1220, 1225 (10th Cir. 2000).

II.  DISCUSSION

A.  Procedural Arguments[1]

    1.  Sovereign Immunity

Defendants first move for summary judgment on Eleventh Amendment grounds, a challenge that goes to the Court's subject matter jurisdiction.  <u>Kirby v. Dallas Cnty. Adult Prob. Dep't</u>, 359 F.App'x 27, 32 (10th Cir. 2009).  Generally, the Eleventh Amendment prohibits citizens from suing states in federal court.  <u>Lewis v. N.M. Dep't of Health</u>, 261 F.3d 970, 975 (10th Cir. 2001).  However, the Supreme Court carved out an exception in <u>Ex parte Young</u>, 209 U.S. 123 (1908), which "permit[s] citizens to seek prospective equitable relief for violations of federal law committed by state officials in their official capacities."  <u>Lewis</u>, 261 F.3d at 975.  To proceed under the <u>Ex parte Young</u> doctrine, Plaintiff's suit must:  (1) be against state officials, not the state itself; (2) allege a non-frivolous violation of federal law; (3) seek only prospective equitable relief, not retroactive monetary compensation; and (4) not implicate "'special sovereignty interests.'"  <u>Id.</u>

Only <u>Lewis</u>'s third requirement is presently at issue.  First, Defendants contend that Plaintiff's request for a declaratory judgment violates the Eleventh Amendment.  Tenth Circuit precedent holds that "[t]he Eleventh Amendment 'does not permit judgments against state officers declaring that they violated federal law in the past.'"  <u>Johns v. Stewart</u>, 57 F.3d

---

[1] Although Plaintiff indicated in her Complaint that this case might involve preemption, the parties have now agreed that there is no question of preemption, and therefore the Court does not address this issue.

1544, 1554-55 (10th Cir. 1995) (quoting P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 146 (1993)). Thus, Plaintiff's request for a declaratory judgment must be dismissed for lack of jurisdiction. Next, Defendants attack Plaintiff's request for injunction certifying Plaintiff as eligible for Medicaid from the date of the requested eligibility. Although the Eleventh Amendment does not bar the Court from issuing an injunction requiring OKDHS to certify Plaintiff eligible for Medicaid going forward, it does prevent the Court from back-dating its certification order. In Lewis, the Tenth Circuit distinguished permissible prospective relief—"ask[ing] that state officials be compelled to comply with federal statutes that allegedly entitle them to . . . services"—from retroactive monetary compensation barred by the Ex parte Young doctrine—"reimburse[ment] for past . . . services." 261 F.3d at 977-78. Certifying Plaintiff eligible as of April 18, 2012, would "require[] payment of state funds . . . as a form of compensation," Edelman v. Jordan, 415 U.S. 651, 668 (1974), and thus constitutes improper relief.

    2. Enforceable Rights Under § 1983

Plaintiff's Complaint alleges that Defendants violated three sections of the federal Medicaid Act by using an improper methodology in assessing her eligibility. Defendants argue that Plaintiff lacks standing to assert this claim because the methodology statutes do not provide for private enforcement. Individuals can use 42 U.S.C. § 1983 to bring suits against state actors to enforce rights created by either federal statutes or the Constitution. Gonzaga Univ. v. Doe, 536 U.S. 273, 279 (2002). However, the availability of § 1983's enforcement authority depends on "whether 'Congress intended to confer individual rights

upon a class of beneficiaries.'" Hobbs ex rel. Hobbs v. Zenderman, 579 F.3d 1171, 1179 (10th Cir. 2009) (quoting Gonzaga Univ., 536 U.S. at 285). Three factors govern the applicability of § 1983:

> First, Congress must have intended that the provision in question benefit the plaintiff. Second, the plaintiff must demonstrate that the right assertedly protected by the statute is not so "vague and amorphous" that its enforcement would strain judicial competence. Third, the statute must unambiguously impose a binding obligation on the States. In other words, the provision giving rise to the asserted right must be couched in mandatory, rather than precatory, terms.

Blessing v. Freestone, 520 U.S. 329, 340-41 (1997) (internal citations omitted). Under the first Blessing factor, "[a] statute embodies congressional intent to benefit the plaintiff only if it is 'phrased in terms of the persons benefitted.'" Hobbs, 579 F.3d at 1179 (quoting Gonzaga Univ., 536 U.S. at 284). This inquiry into congressional intent requires the Court to "analyze separately each statutory provision in order to determine if any unambiguously confers rights on the plaintiff." Bernard v. Kan. Health Policy Auth., Case No. 09-1247-JTM, 2011 WL 768145, at *7 (D. Kan. Feb. 28, 2011).

None of the three statutes relied on by Plaintiff in her Complaint—42 U.S.C. §§ 1396a(a)(10)(C)(i)(III) and 1396a(r)(2)(A), 1396p(c)(1)—can support a claim under § 1983. In Hobbs, the Tenth Circuit expressly rejected claims brought under the Medicaid Act's "methodology provisions," a holding that would apply to §§ 1396a(a)(10)(C)(i)(III) and 1396a(r)(2)(A). Plaintiff's claim under § 1396p(c)(1) likewise fails because neither § 1396p(c)(1)(A) nor § 1396p(c)(1)(I) includes the "rights-creating" language indicating

congressional intent to invoke an individual entitlement for a certain benefitted class.[2]  See Bernard, 2011 WL 768145 at *8 (noting § 1396p(c)(1)(A) "imposes a binding <u>obligation on the state</u>" "[r]ather than conferring a benefit on the plaintiff").

However, although § 1396p(c)<u>(1)</u> fails the first prong of the Blessing test, § 1396p(c)<u>(2)</u>[3] does speak in terms of individual rights, as required.  See Bernard, 2011 WL 768145 at *9 ("Unlike § 1396p(c)(1)(A), [§ 1396p(c)(2)(B)(i)] satisfies all prongs of the Blessing test.").  Relevant to Plaintiff's action, § 1396p(c)(2)(C) provides:  "<u>An individual shall not be ineligible</u> for medical assistance by reason of paragraph (1) to the extent that . . . (C) a satisfactory showing is made to the State . . . that . . . the individual intended to dispose of the assets either at fair market value, or for other valuable consideration." (emphasis added).  Section 1396p(c)(2)(C) not only speaks contains the necessary "rights-creating" language, it also couches its obligation in mandatory terms and is not impermissibly vague or amorphous.  Thus, § 1396p(c)(2)(C) provides an adequate statutory foundation for a lawsuit brought pursuant to § 1983.

B.  Merits Arguments

Pursuant to Title XIX of the Social Security Act of 1965, Congress created the Medicaid program "to provide 'health care to persons who cannot afford such care.'"

---

[2] For example, § 1396p(c)(1)(A)'s only mention of "individuals" relates to the state's obligation and § 1396p(c)(1)(I)'s definition of "assets" does not reference individuals at all.

[3] The Court acknowledges that Plaintiff did not cite § 1396p(c)(2) in her Complaint.  However, the Court will deem Plaintiff to have pleaded a claim under § 1396p(c)(2), rather than giving Plaintiff leave to amend, to aid judicial efficiency and prevent further delays.


congressional intent to invoke an individual entitlement for a certain benefitted class.[2]  See Bernard, 2011 WL 768145 at *8 (noting § 1396p(c)(1)(A) "imposes a binding <u>obligation on the state</u>" "[r]ather than conferring a benefit on the plaintiff").

However, although § 1396p(c)<u>(1)</u> fails the first prong of the Blessing test, § 1396p(c)<u>(2)</u>[3] does speak in terms of individual rights, as required.  See Bernard, 2011 WL 768145 at *9 ("Unlike § 1396p(c)(1)(A), [§ 1396p(c)(2)(B)(i)] satisfies all prongs of the Blessing test.").  Relevant to Plaintiff's action, § 1396p(c)(2)(C) provides:  "<u>An individual shall not be ineligible</u> for medical assistance by reason of paragraph (1) to the extent that . . . (C) a satisfactory showing is made to the State . . . that . . . the individual intended to dispose of the assets either at fair market value, or for other valuable consideration." (emphasis added).  Section 1396p(c)(2)(C) not only speaks contains the necessary "rights-creating" language, it also couches its obligation in mandatory terms and is not impermissibly vague or amorphous.  Thus, § 1396p(c)(2)(C) provides an adequate statutory foundation for a lawsuit brought pursuant to § 1983.

B.  Merits Arguments

Pursuant to Title XIX of the Social Security Act of 1965, Congress created the Medicaid program "to provide 'health care to persons who cannot afford such care.'"

---

[2] For example, § 1396p(c)(1)(A)'s only mention of "individuals" relates to the state's obligation and § 1396p(c)(1)(I)'s definition of "assets" does not reference individuals at all.

[3] The Court acknowledges that Plaintiff did not cite § 1396p(c)(2) in her Complaint. However, the Court will deem Plaintiff to have pleaded a claim under § 1396p(c)(2), rather than giving Plaintiff leave to amend, to aid judicial efficiency and prevent further delays.

(Morris v. Okla. Dep't of Human Servs., 685 F.3d 925, 928 (10th Cir. 2012) (quoting Brown v. Day, 555 F.3d 882, 885 (10th Cir. 2009)).  Medicaid is a cooperative program, jointly financed by the federal and state governments, but administered by the states.  To opt into the Medicaid program and receive federal financial assistance, a state must agree to "operate[] its Medicaid program in compliance with federal statutory and regulatory requirements."  Brown, 555 F.3d at 885.  Oklahoma has opted to participate in the Medicaid program.

Congress included income and resource eligibility thresholds in the Medicaid Act "[t]o ensure the Medicaid program serves needy persons."  Id.  For example, for an "aged"[4] individual to qualify for long-term care assistance, that individual may not have more than $2,000 of resources and must not have disposed of any assets for less than fair market value during the last five years.  42 U.S.C. §§ 1396a(a)(17), 1382(a)(1)(B), 1396p(c)(1)(A), 1396p(c)(1)(B)(i).  At issue in this case is whether OKDHS complied with federal statutes and regulatory requirements pertaining to eligibility when it denied Plaintiff benefits based on her receipt of the Note in exchange for her farm and Edwards Jones account.

1.  Promissory Notes as "Resources"

Under the federal regulations, promissory notes generally constitute "resources" for the purpose of determining Medicaid eligibility.  "Resources" is a term of art used to described assets available to a Medicaid applicant "mean[ing] cash or other liquid assets or

---

[4] An "aged" individual is an individual who is at least 65 years old.

any real or personal property that an individual owns and could convert to cash to be used for support and maintenance." 20 C.F.R. § 416.120(c)(3). "Liquid assets" or "liquid resources" "are cash or other property which can be converted to cash within 20 days." 20 C.F.R. § 416.1201(b). One specified example of a liquid resource is a promissory note. Id. Thus, because promissory notes are generally liquid assets, they are normally resources of a Medicaid applicant.

However, Plaintiffs argue that the Note in this case is different because of its terms, which prevent either party from "grant[ing], bargain[ing], sell[ing], assign[ing], convey[ing] or transfer[ing] this note or any payments hereunder" made as a result of the Note. (Pl.'s Mot. for Summ. J., Dkt. No. 24, Ex. 3.) The sole exception to the anti-assignment clause is an allowance made for Plaintiff, the Lender, to transfer the note to a revocable trust for estate planning purposes. An expert hired to review the Note stated he did "not believe the Note can be sold on any secondary market," making it "of no value in the hands of a third party" because of the anti-assignment clause and the nature of the secondary market or promissory notes. (Id., Ex. 6.) Therefore, the Note cannot be converted into cash within twenty days,

meaning it is not a liquid asset.[5] And, as the Tenth Circuit noted in Morris,[6] "'[i]f a property right cannot be liquidated, the property will not be considered a resource of the individual.'" 685 F.3d at 930 (quoting 20 C.F.R. § 416.1201).

Additional support for this conclusion is found in the Program Operations Manual System ("POMS"), a Social Security Administration publication to which both parties accord deference. See Ramey v. Reinertson, 268 F.3d 955, 964 n.2 (10th Cir. 2001) (noting deference to the POMS provisions unless a court finds them 'arbitrary, capricious, or contrary to law') (citation omitted). Pursuant to POMS SI 01120.220, a promissory note is a resource to the lender if it is "negotiable," meaning assignable on its face. Since the Note in this case is not transferable on its face, given the anti-assignment clause, it is not negotiable, and thus not a resource under the POMS. See Harper v. Okla. ex rel. Okla. Dep't of Human Servs., Case No. CIV-10-514-R (W.D. Okla. Mar. 22, 2011) (unpublished).

---

[5] Defendants argue that Plaintiff can convert the Note into cash, notwithstanding the Note's anti-assignment provision. According to Defendants, although Plaintiff may not sell, assign, or transfer the Note or any payments, Plaintiff could use the potential payments to secure a second promissory note. However, this contention is too speculative to support a denial of Medicaid benefits, particularly given the unlikely scenario of a lender agreeing to loan Plaintiff, a 95-year-old woman with dementia, a significant sum of money with nothing more than an unsecured note from a family member as collateral.

[6] The Court acknowledges that this conclusion differs from the one reached in Gragert v. Hendrick, Case No. CIV-11-984-C, 2012 WL 1893635, at *2 (W.D. Okla. May 24, 2012). However, this Court decided Gragert several months before the Tenth Circuit issued its opinion in Morris. This Court's current opinion reflects the Tenth Circuit's holding in Morris that the Medicaid statutes and regulations should be read as technically written, even when that creates loopholes. 685 F.3d at 938 (reversing the district court and interpreting the Medicaid statutes to give effect to an annuities provision despite recognizing "the district court's concerns about the annuity provisions in the Medicaid statutes" and acknowledging "the fiscal strain Medicaid can exert on state budgets").

### 2. Trust-Like Device

Alternatively, Defendants contend that even if the Note is not a resource under the "regular rules," it is a resource under the secondary "trust rules." Sable v. Velez, 388 F. App'x 235, 237 (3d Cir. 2010). Congress amended the Medicaid Act to create the "trust rules" in order to close a loophole exploited by some applicants: Because trusts frequently do not qualify as resources under the regular rules, some applicants placed their assets and money in trusts in order to evade the Medicaid Act's resource limitation. Id. Now, 42 U.S.C. § 1382b(e) deems trusts and trust-like devices resources unless explicitly excluded. The POMS define a trust-like device as "a legal instrument, device, or arrangement, which may not be called a trust under State law, but is similar to a trust." POMS SI 1120.201(B)(5). A trust-like device must include: (1) a grantor (2) who transfers property (3) to an individual or entity with fiduciary obligations (a trustee) (4) "with the intention that it be held, managed or administered by the individual or entity for the benefit of the grantor or others." Id. Under this definition, Defendants argue that the Note transaction created a trust-like device. Plaintiff does not dispute that she transferred money and property to her son and could be considered a grantor under the first POMS requirement. However, Plaintiff asserts that she did not transfer property to a trustee and that there was no intention that her son use or hold the property for her benefit.

The Court agrees with Plaintiff that the transaction did not constitute a trust-like device. Although Defendants make much of Gary Lemmons' service as his mother's attorney-in-fact—a position creating fiduciary obligations—the fact that Mr. Lemmons owes

fiduciary duties to his mother in a certain context does not make him her trustee in all circumstances. Additionally, the Court rejects Defendants' reliance on a statement made by Gary Lemmons at his deposition and taken out of context. Gary Lemmons testified that the property transaction was to benefit his mother because he thought she needed the money. (Defs.' Mot. for Summ. J., Dkt. No. 33, Ex. 1 at 55.) However, this testimony does not indicate that Mr. Lemmons intended to <u>hold</u> the property for his mother's benefit as trustee; rather, it demonstrates that the <u>transaction</u> was to benefit his mother by providing her income from the promissory note. Likewise, the Court rejects Defendants' insinuation that the use of a law firm practicing in the field of Medicaid planning is dispositive of whether the transaction created a trust-like device. Because Gary Lemmons holds the farm and account for his own benefit, not as his mother's trustee, the Note does not qualify as a resource.

### 3. Transfer Penalty

Regardless of whether the Note is a resource, Defendants argue Plaintiff is ineligible for medical assistance because of the "transfer penalty" found in 42 U.S.C. § 1396p(c)(1)(A). Essentially, Defendants contend that Plaintiff received a "worthless" Note in exchange for property valued at $84,600, meaning she sold her resources for less than fair market value. In contrast, Plaintiff insists the transfer penalty does not apply to the exchange because the Note received qualifies for the exception in § 1396p(c)(1)(I). Subsection 1396p(c)(1)(I) specifically addresses the transfer of assets in exchange for a promissory note and provides that an individual's countable "assets" will include funds used to purchase a promissory note <u>unless</u> that note: (1) has an actuarially sound repayment term; (2) provides for equal

11

payments, with no deferral or balloon payments; and (3) prohibits cancellation of the note upon the death of the lender-applicant. Although Defendants concede that the Note meets all three requirements, they argue that the transaction should nonetheless be penalized because the Note was "worthless," a situation Congress did not contemplate in enacting § 1396p(c)(1)(I).

The Court disagrees both with Defendants' characterization of the Note as "worthless" and their misunderstanding of § 1396p(c)(1)(I). First, although an expert hired to review the Note did testify that the Note was "of no value," the full context of that statement is necessary: "I do not believe the Note can be sold on any secondary market. Consequently, the Note is of no value <u>in the hands of a third party</u> or in the secondary market." (Pl.'s Mot. for Summ. J., Ex. 6.) The expert did not opine that the Note was totally worthless, contrary to what Defendants would have this Court believe. Rather, he indicated that the Note has no value for anyone <u>but Plaintiff</u> because of the Note's anti-assignment provision. Moreover, regardless of the Note's value, the Tenth Circuit's decision in <u>Morris</u> precludes the imposition of the transfer penalty. Although <u>Morris</u> did not address the intersection of §§ 1396p(c)(1)(A) and 1396p(c)(1)(I), <u>Morris</u> did discuss the interaction between § 1396p(c)(1)(A) and two analogous provisions, §§ 1396p(c)(1)(F) and 1396p(c)(1)(G). In <u>Morris</u>, the Court recognized that individuals could use the annuity provisions at issue in that case to "act strategically" and avoid the transfer penalty. 685 F.3d at 937. Under this rationale, using the exception to the transfer penalty in § 1396p(c)(1)(I) is a valid form of Medicaid planning. Defendants may not use § 1396p(c)(1)(A) to penalize Plaintiff for taking

advantage of a lawful loophole that Congress has not foreclosed. Id. at 934 (noting "despite its presumed awareness . . . , Congress has not revised the Medicaid statute to foreclose this option").

### 4. Sham Transaction

Finally, Defendants argue that the property-for-Note transaction is a "sham transaction," not worthy of recognition. To the extent that Defendants contend that strategic but lawful Medicaid planning always results in a sham transaction, the Court rejects that argument. See id. at 928 (holding that only Congress can address the exploitation of loopholes). Likewise, the Court rejects Defendants' remaining "sham" contentions. First, the Court disagrees that in facilitating the transaction Gary Lemmons "failed to exercise his fiduciary duties toward his mother as her attorney-in-fact, and frankly, failed to exercise his moral duties toward her as her son." (Defs.' Mot. for Summ. J. at 26.) Plaintiff's expert opined that "the 'Note' is a reasonable promissory note based on the circumstances under which it was executed," with a reasonable rate of interest, repayment structure, and default provision. (Pl.'s Mot. for Summ. J., Ex. 6.) Next, Defendants' arguments about Gary Lemmons as trustee of Plaintiff's estate planning trust are irrelevant, as the terms of the trust provided a successor trustee would not be named until specific events had transpired, none of which occurred here. Finally, despite evidence to the contrary, Defendants argued that the Edwards Jones account transferred to Gary Lemmons with the farm was part of Plaintiff's estate planning trust, thereby accusing Mr. Lemmons of "unlawfully raid[ing] his mother's trust." (Defs.' Mot. for Summ. J. at 29.) However, records from Edward Jones prove that

Plaintiff and Gary Lemmons owned the account together, as joint tenants with rights of survivorship; the account was not part of Plaintiff's estate planning trust. (See Pl.'s Resp. to Defs.' Mot. for Summ. J., Ex. 1.)

### III. CONCLUSION

Accordingly, the Court hereby GRANTS Plaintiff's Motion for Summary Judgment (Dkt. No. 32). The Court hereby GRANTS IN PART and DENIES IN PART Defendants' Motion for Summary Judgment (Dkt. No. 33). Judgment will be entered for Plaintiff.

IT IS SO ORDERED this 21st day of March, 2013.

*[signature]*
ROBIN J. CAUTHRON
United States District Judge